**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **United States of America,** | : | |
| | : | |
| vs. | : | |
| | : | CRIMINAL ACTION |
| **The Public Warehousing Company** | : | NO. 1:09-CR-490-TWT-AJB |
| **K.S.C., a/k/a Agility,** | : | (Superseding Indictment) |
| **Agility DGS Logistics Services** | : | |
| **Company KSC(C), et al** | : | |
| | : | |
| **Defendants.** | : | |

**AGILITY DGS LOGISTICS SERVICES COMPANY KSC(C)'S REPLY
BRIEF IN SUPPORT OF MOTION TO QUASH GRAND JURY
SUBPOENA ISSUED TO DAN MONGEON**

Comes now Defendant Agility DGS Logistics Services Company KSC(c) and hereby files this reply brief in support of its Motion to the Quash Grand Jury Subpoena issued to Dan Mongeon. In reply to the Government's opposition to the motion, Defendant shows the Court the following.

As the Court well knows, the indictment in this case concerns alleged acts of fraud in connection with the performance of services rendered under two different Prime Vendor Contracts, described more fully in the Government's indictment. The first Prime Vendor Contract (PVI) was awarded to Defendant Public Warehousing Company, KSC in May of 2003. A second Prime Vendor Contract

(PVII) was awarded on June 3, 2005. Despite the fact that an ongoing criminal investigation was underway at the time, the Government exercised its option to extend PV II on June 3, 2009. That contract expired on December 4, 2010. Accordingly, as of the date of this pleading, no services are being rendered by the Defendants to the Government under any Prime Vendor Contract.

The Defendants are alleged to have defrauded the United States with respect to both Prime Vendor Contracts. Allegedly, the Defendants conspired to overcharge the Government and willfully violate various terms of the contracts. The Court will recall that Defendant Agility DGS Logistics Services Company KSC(c) is not a party to either contract but is alleged by the Government to be a co-conspirator in its role as a subcontractor performing services under those contracts.

To the extent that the Government seeks to question Major General Mongeon about any of the acts alleged in the indictment concerning either PVI or II, the Defendant would contend that this would be an inappropriate use of the Grand Jury. If the Grand Jury could have questioned General Mongeon the day before the return of the indictment about the same questions that will be posed to him during the proposed Grand Jury examination, respectfully, this would be inappropriate. Only if the Government is truly investigating matters not covered

by the expansive "scheme to defraud" allegations and which could not have been explored before the returning of the indictment should the Government be allowed to proceed. Respectfully, any questions concerning either PV I or II should be off limits because the Defendants have been indicted for conspiring with one another to engage in various schemes to defraud the Government with respect to those contracts. While the Defendants deny committing any violations of criminal law and contend that this case involves at most a breach of contract dispute, nonetheless, it would be inappropriate for the Government to explore its theories of the case via a Grand Jury subpoena if the area of the proposed examination concerns either PV I or II.

The Court can well appreciate how easily the Grand Jury's authority can be abused under a pretext of investigating "new crimes." During the performance of the Prime Vendor Contracts, over 1 million meals per day were provided to U.S. troops in Iraq and Kuwait. The Government could contend that each time a meal was delivered to the field, if there was an overcharge, that a "new crime" occurred on each and every occasion. However, the alleged scheme to defraud is not alleged to have changed. What is <u>alleged</u> is that there was an ongoing scheme to overcharge the Government and that thereafter various invoices were submitted to the Government in the course of the alleged ongoing fraudulent scheme.This being

the case, it would be disingenuous in the extreme to permit the Government to utilize a Grand Jury subpoena to take the deposition of an indicted Defendant concerning alleged "new crimes" if the alleged new crimes occurred in connection with the schemes already alleged in connection with the Defendants' performance under either PV I or II.

The Defendant does not object to General Mongeon being questioned about matters having nothing to do with either PVI or II. The Defendant does object to examination of its board member concerning matters already under indictment and would respectfully submit that if the Grand Jury subpoena is allowed, then under the same theory, the Government could subpoena to the Grand Jury any employee and/or officer of the corporation to bolster its allegations regarding PV I or II.

The Court should require the Government to demonstrate that the proposed examination will not implicate the alleged schemes to defraud the Government with respect to either PVI or II. If the proposed examination concerns the same subject matter described in the indictment, the Court should exercise its supervisory authority to quash the subpoena on this ground alone.

In addition to Defendants' concerns concerning the propriety of the use of the Grand Jury's authority as set forth in the original brief filed in connection with this matter, the Defendant is also concerned about the attorney-client privilege.

The Government has been advised that General Mongeon's knowledge about PVI and II has been significantly influenced by debriefings from counsel. The Government proposes that the witness can protect the attorney-client privilege of this Defendant simply because he is more sophisticated than the average witness and will have available to him the advice of his own attorney. Again, General Mongeon is not the movant here and the privilege does not belong to General Mongeon. It is not within his power to waive the privilege. To the extent that he should provide testimony to the Grand Jury which has been influenced by privileged communications he has received, then, in that event, the Defendant attorney-client privilege would have been violated.

The Court should inquire as to the scope of the proposed examination before allowing the Grand Jury appearance to proceed. If the scope of the proposed examination deals with either PV I or II, it should be disallowed because such testimony does not involve "new" claims and will <u>very likely</u> invade the attorney-client privilege. Because counsel for the Defendant will not be in the Grand Jury and will not be in a position to object to General Mongeon answering any specific question, to the extent that he answers a question and provides information obtained in part as a result of attorney-client privileged communications the proverbial bell would have been rung.

For the reasons set forth herein, the Defendant requests that the Court inquire into the basis of the issuance of the Grand Jury subpoena, the nature and scope of the proposed examination, and whether it is likely that the proposed examination may violate Defendant's attorney-client privilege.

                    Respectfully submitted,

                    /s/ *Richard W. Hendrix*
                    Richard W. Hendrix
                    Ga. Bar No. 346750
                    FINCH MCCRANIE, LLP
                    225 Peachtree Street, NE
                    1700 South Tower
                    Atlanta, GA 30303
                    Telephone: (404) 658-9070
                    Facsimile: (404) 688-0649
                    E-mail: rhendrix@finchmccranie.com
                    Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I have caused a copy of the foregoing <u>Defendant Agility DGS Logistics Services Company KSC(c)'s Reply Brief in Support of Motion to Quash Grand Jury Subpoena Issued to Dan Mongeon</u> to be electronically filed with the Clerk of court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

| | |
|---|---|
| Steven D. Grimberg | David J. Bailey |
| Alana R. Black | Richard H. Deane, Jr. |
| Justin Anand | Thomas D. Bever |
| Patty Bowen | |

This 22nd day of July, 2011.

/s/ *Richard W. Hendrix*
Richard W. Hendrix
Ga. Bar No. 346750
FINCH MCCRANIE, LLP
225 Peachtree Street, NE
1700 South Tower
Atlanta, GA 30303
Telephone: (404) 658-9070
Facsimile:   (404) 688-0649
E-mail: rhendrix@finchmccranie.com
Attorney for Defendant